UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LAURIE J. DUNN,                                        18-CV-0688-MJR

              Plaintiff,                          DECISION AND ORDER

   -v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

      Plaintiff Laurie J. Dunn ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 13) is denied and defendant's motion (Dkt. No. 15) is granted.

## BACKGROUND[1]

      Plaintiff filed applications for DIB and SSI on January 30, 2017, alleging disability since January 1, 2010. (Tr. 295-319)[2] Her claims were initially denied on April 25, 2017. She thereafter appeared and testified at an administrative hearing on October 5, 2017. in

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 7)

Buffalo, New York, before Administrative Law Judge ("ALJ") Melissa Jones.  (Tr. 39-95)

A supplemental hearing was held on January 18, 2018, after which the ALJ issued an

unfavorable decision on February 5, 2018.  (Tr. 15-28, 88-90, 95-145)  The Appeals

Council denied review on April 23, 2018, and this timely action followed.  (Tr. 1-8, *see*

Dkt. No. 1)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act,

the Commissioner's factual determinations "shall be conclusive" so long as they are

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted).  "The substantial evidence test applies not only to findings on basic

evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

rests on adequate findings supported by evidence having rational probative force," the

Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574

(W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is

the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to

appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).   The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*,

712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional

capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff engaged in substantial gainful activity for various periods of time after January 1, 2010, including from April, 2015 to April, 2016.[3]

---

[3] The remainder of the decision addressed the periods of time during which plaintiff did not engage in substantial gainful activity.

(Tr. 17-18)  At step two, the ALJ found that plaintiff had severe impairments of: (1) obesity;

(2) bilateral knee degenerative joint disease-status post bilateral total knee replacements;

(3) degenerative disc disease of the lumbar spine; and (4) chronic kidney disease with

recurring kidney stones.  (*Id.*)  At step three, the ALJ determined that plaintiff did not have

an impairment or combination of impairments that meets or medically equals the severity

of one of the listed impairments.  (Tr. 21-22)  Before proceeding to step four, the ALJ

assessed plaintiff's RFC as of August 12, 2015, as follows:

> The claimant has the residual functional capacity to perform less than the
> full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> because the claimant is able to lift and/or carry twenty pounds occasionally
> and ten pounds frequently, stand and/or walk for six hours in an eight-hour
> workday, and sit for six hours in an eight-hour workday, but she must use a
> cane for ambulation.  The claimant is only occasionally able to balance,
> stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and
> scaffolds.  In addition, the claimant must avoid bright lights.

(Tr. 22)

The ALJ ended her analysis at step four upon finding that plaintiff was capable of

performing her past relevant work as a payroll clerk, medical records clerk, administrative

assistant, and medical secretary.  (Tr. 27-28)   Accordingly, the ALJ found that plaintiff

had not been under a disability within the meaning of the Act.  (Tr. 28)

IV.     *Plaintiff's Challenges*

Plaintiff argues that remand is required because the ALJ improperly evaluated the

opinion evidence.  (*See* Dkt. No. 13-1 at 11-17)

A.       **Treating Physician Rule**[4]

---

[4] Under the pertinent regulations in place at the time of Plaintiff's application, the treating physician rule
"generally requires deference to the medical opinions of a [Plaintiff's] treating physician[.]".  *Halloran v.
Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) (The opinion of a treating physician is

Plaintiff first contends that the ALJ failed to adhere to the treating physician rule in rejecting a treating medical source statement. (Dkt. No. 13-1 at 11)

Plaintiff's treating physician Dr. David Stahl completed a medical source statement on plaintiff's behalf dated September 21, 2017. He noted he had been treating plaintiff every four months since 1997. She had diagnoses of right knee pain; morbid obesity; renal disease; depression, anxiety, and stage II chronic kidney disease. Dr. Stahl opined that plaintiff could not engage in full-time competitive employment on a sustained basis, that she would be off task more than 30 percent of the time, and she would miss more than four days of work per month. He further opined that Plaintiff could sit for 10 minutes and stand for five to 10 minutes at a time; sit for two hours and stand for two hours in an eight-hour day; lift 10 pounds frequently and 20 pounds occasionally; never stoop, crouch, or climb ladders; and only rarely twist or climb stairs. She would need a cane to ambulate. (Tr. 2227-2231)

The ALJ afforded this opinion "very little weight," because it was inconsistent with the longitudinal medical evidence in the record, including plaintiff's "good response" to ongoing medical treatment, her reported activities of daily living, and her work history after the alleged onset date. (Tr. 26) She acknowledged plaintiff's treatment relationship with Dr. Stahl, noting three visits annually. (Id.) The ALJ then rejected Dr. Stahl's opinion that plaintiff would be off-task 30% of the time and absent from work four days per month because it was inconsistent with the opinions of the consultative examiners. (Id.) Further, his assessment of plaintiff's postural limitations was inconsistent with the opinions of the

to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]").

consultative examiner and medical review physician, and was contradicted by plaintiff's own hearing testimony regarding her daily activities. (Tr. 26-27)

Plaintiff argues that the ALJ failed to provide good reasons for not affording controlling weight to Dr. Stahl's opinion. (Dkt. No. 13-1 at 11-14) It is true that an ALJ must provide good reasons when not assigning controlling weight to a treating-source opinion. *See* 20 C.F.R. § 416.927(c) In this regard, an ALJ is required to "explicitly consider" the following regulatory factors at 20 C.F.R. § 416.927(c)(1)-(5) when assigning other than controlling weight to the opinion of a treating physician: (1) the frequency, length, nature, and extent of the treatment relationship; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 129) (citing 20 C.F.R. § 404.1527(c)(2)) (other citations omitted). The *Estrella* court concluded that an error in failing to explicitly consider these required-factors would be considered harmless if a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). Here, it is apparent that ALJ considered the regulatory factors, and the treating physician rule was not traversed.

Prior to evaluating the opinion evidence, the ALJ thoroughly summarized the medical record. (Tr. 24-26) The Court has also reviewed the medical record and agrees with the ALJ and the Commissioner that it does not support such restrictive limitations, as discussed in detail below. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011)

("The less consistent an opinion is with the record as a whole, the less weight it is to be given.").

### 1.    Treatment Notes, Dr. Stahl

Plaintiff had a history of knee pain and surgeries, beginning with a left knee replacement in 2011.

In April 2015, she reported left knee pain to Dr. Stahl and stated that she was working and had joined a fitness club.  (Tr. 490)  On examination, she had good foot motor strength, no limp, and did not use an assistive device.  (Tr. 491)  In May 2015, plaintiff reported to Dr. Stahl that she did not like her job working evening shifts, and made no knee complaints. (Tr. 486)  Likewise, she did not make any complaints regarding her knees in August 2015.  (Tr. 449-50) On examination, she had a normal gait and no edema in her lower extremities.  (Tr. 450)  In September 2015, Dr. Stahl's examination showed that plaintiff ambulated well and unassisted.  (Tr. 455)  Dr. Stahl noted a normal gait again later that month and again in November 2015.  (Tr. 458, 462)

In January 2016, plaintiff reported that her knees and ankles bothered her, but was "feeling well overall."  (Tr. 468)  She stated that her pain medication was "stabilizing her pain well."  (*Id.*)  Dr. Stahl noted that plaintiff "is comfortable in appearance with movement and ambulation—ambulates without assistance."  (Tr. 470)  Dr. Stahl again did not note any knee issues in his May 2016 examination.  (Tr. 474)  A July 2016 examination showed that plaintiff had some tenderness in her right knee, but no swelling or deformity.  (Tr. 478)  She had good range of motion in her right knee and normal motor strength.  (*Id.*)  Dr. Stahl again noted in September 2016 that Plaintiff had no edema in her extremities and an intact and unaided gait.  (Tr. 483)  Dr. Stahl noted some right-knee tenderness in

December 2016. (Tr. 498)  In February 2016, Plaintiff had some right-knee tenderness, but she had normal motor strength and no edema.  (Tr. 503)

In December 2016, plaintiff had no edema and some tenderness in the right knee region.  (Tr. 3315)  She had symmetric motor strength and intact/unassisted gait, with right knee tender to palpation in February 2017.  During that visit, Dr. Stahl recommended 150 minutes of moderate aerobic activity or 75 minutes of vigorous aerobic activity per week and weight loss of 5-10 pounds prior to the next scheduled appointment.  He noted that plaintiff was not following diet as recommended and was unwilling/unable to exercise as recommended.  (Tr. 3323-25)

On April 12, 2017, plaintiff presented to Dr. Stahl for medical clearance for a total right knee arthroplasty.  (Tr. 3343)  She had tenderness over the right medial knee, and the knee was enlarged in appearance.  She had limited flexion of the right knee, with no peripheral edema.  (Tr. 3345)  Plaintiff underwent a total right-knee replacement in April 2017.  (Tr. 1486)

In August 2017, plaintiff complained of lower extremity edema which was "not bad but noticeable." (Tr. 3354)  Dr. Stahl noted that she was able to bear weight and ambulate without difficulty or assistance.  (Tr. 3356)

Plaintiff had a check-up with Dr. Stahl on September 21, 2017, after having surgery on her right knee to remove scar tissue.  (Tr. 3362, *see also* Tr. 2193)  Dr. Stahl noted that plaintiff was applying for disability and requested a cane for ambulation. She reported that she was "quite limited in her ability to stand and walk for any length of time or distance.  Moreover, sitting is limited as far as duration." (Tr. 3362)  Upon examination,

plaintiff was able to bear weight and ambulated with some difficulty.  No limp was noted, and she had limited right and left knee flexion.  (Tr. 3364)

In Jaunary 2018, plaintiff had no peripheral edema, symmetrical motor strength in all four extremities, and she ambulated without assistance.  (Tr. 3394)  Dr. Stahl again recommended exercise and weight loss.  (Tr. 3396)

 2. *Treatment Notes, Dr. Landfried*

Plaintiff also treated with Dr. Matthew J. Landfried at Genesee Orthopaedics and Sports Medicine for her knee condition.  By March 2017, Plaintiff's right-knee pain had increased.  (Tr. 1548)  She reported that she had knee replacement on the left in 2011 and was doing "moderately well" with that knee. (Tr. 1548)  Dr. Landfried examined plaintiff and noted that she had normal gait for her age. (Tr. 1549)  Plaintiff had some tenderness and diminished strength in the right knee, but had a full range of motion.  (*Id.*)  Plaintiff wanted a total knee replacement as she was "doing well with the left."  (*Id.*)

As stated above, plaintiff underwent a total right-knee replacement in April 2017.  (Tr. 1486)  She was instructed to use a walker for ambulation post-surgery and to attend physical therapy. (Tr. 1491)  A post-surgery x-ray showed a successful replacement.  (Tr. 1561)  The next month, in May 2017, plaintiff was "doing well" with "minimal pain" and ambulating with a walker.  (Tr. 1555)  Her incision was healing well and she was minimally tender to palpitation.  (Tr. 1556)  She had limited but active flexion to greater than 90 degrees and near full extension.  (*Id.*)

Plaintiff still had some complaints as to her right knee in July 2017, though she ambulated without any assistive device.  (Tr. 3351)  Dr. Landfried determined that some

scar tissue had developed from the knee-replacement surgery and recommended a manipulation surgery to resolve the issue. (Tr. 3353)

Plaintiff underwent a manipulation of the right knee in August 2017. (Tr. 2193) Ten days later she reported "feeling better." (Tr. 3359) Plaintiff stated that she still had some stiffness, but had "much less pain." (Id.) She was able to ambulate without an assistive device. (Id.) On examination, she walked with a normal gait and had minimal tenderness with nearly full range of motion. (Tr. 3360) Dr. Landfried advised plaintiff that she would continue to progress with therapy. (Id.)

A week before the administrative hearing, plaintiff presented to Dr. Landfried for a follow-up on her right knee. (Tr. 3367) Dr. Landfried noted that "she is very happy with her results and is doing much better." (Id.) Her range of motion had improved and she was ambulating without any assistive devices. Dr. Landfried noted that "her pain is controlled with pain medication and she reports no other complaints today." (Id.) On examination, plaintiff's right knee was minimally tender on palpitation with full flexion and lacking a few degrees of extension. She walked with a normal gait and had full motor strength in her extremities. Dr. Landfried provided plaintiff with exercises she could perform at home to continue with her progress. (Tr. 3368)

Overall, the clinical findings of record do not support Dr. Stahl's assessment of highly restrictive limitations.[5] The ALJ therefore did not err in assigning this opinion little weight. *See Klodzinski v. Astrue,* 274 Fed. Appx. 72, 73 (2d Cir.2008) (substance of treating physician rule was not traversed where treating physician's opinion was "not well-supported by clinical findings and was contradicted by substantial evidence in the

---

[5] Even affording Dr. Stahl's opinion little weight, the ALJ nonetheless incorporated the use of a cane for ambulation into the formulated RFC. (Tr. 22)

record"); *Monroe v. Colvin*, 676 Fed. Appx. 5, 7-8 (2d Cir. Jan. 18, 2017) (unpublished) (ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of that physician's opinion with his treatment notes); *Woodmancy v. Colvin*, 577 Fed. Appx. 72, 75 (2d Cir. 2014) (summary order) (record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions).

In addition, the ALJ properly considered plaintiff's reported daily activities in discounting Dr. Stahl's opinion. (Tr. 26) *See generally* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole). Plaintiff reported to Dr. Schwab that she cooked more than seven times a week, cleaned more than seven times a week, did laundry three times a week, and shopped once a week. (Tr. 638) Plaintiff testified that in November 2016, she went to Magic Kingdom and the Daytona Speedway in Florida for a week. (Tr. 79) She stated that she was able to all the chores anybody else could do, it just took her longer to do them. (Tr. 45) From 2010 to 2014, plaintiff took college classes, both in person and online. (Tr. 49) After that, she worked inspection at a factory. (Tr. 51) The ALJ properly considered plaintiff's daily activities to the extent they contradicted Dr. Stahl's opinion of extreme limitations. *See Abarzua v. Berryhill*, 754 Fed. Appx. 70, 71 (2d Cir. 2019) (summary order) (ALJ did not err in observing that treating physician's opinion that Abarzua could not lift ten pounds or sit continuously was contradicted by her activities of daily living, the findings and conclusion of consultative medical sources, and her conservative treatment).

Based on the record evidence, the ALJ did not violate the treating physician rule, and remand is not required on this basis.

13

### B.   Staleness

Plaintiff also claims that the consulting state agency opinions did not amount to substantial evidence because they pre-dated plaintiff's total right knee replacement. (Dkt. No. 13-1 at 14)[6]

On March 24, 2017, plaintiff underwent a consultative examination with John Schwab, D.O. (Tr. 637-40)  Plaintiff reported pain that rated 10 out of 10, generally, but did not know the diagnosis of the pain. (Tr. 637)  Plaintiff reported that she cooked more than seven times a week, cleaned more than seven times a week, did laundry three times a week, and shopped once a week. (Tr. 638)  On examination, Plaintiff displayed a slight limp, refused to walk on her heels and toes, and could squat 50 percent of normal. (*Id.*) Her stance was normal, she needed no help getting on and off the examination table, she was able to rise from a chair without difficulty, and she used no assistive device. (*Id.*) Plaintiff had full range of motion in her entire spine and knees.  She was tender in her right knee, but the knee had no redness, heat, swelling, or effusion.  Her joints were stable. (Tr. 639)

Dr. Schwab opined that Plaintiff had mild restrictions to bending, lifting, and carrying heavy objects. (Tr. 639)  She had a marked restriction in kneeling on the right knee, and she should avoid any bright lights that might trigger a migraine. (Tr. 640)

In April 2017, state agency physician Gary Ehlert, M.D., reviewed plaintiff's medical records and similarly opined that Plaintiff could perform light work with occasional postural limitations. (Tr. 159-61)

---

[6] In her reply brief, plaintiff asserts that the Commissioner did not respond to this argument, and as such, remand is required. (Dkt. No. 16 at 1)  This is incorrect—defendant explicitly addressed this point on page 17 of his memorandum of law. (Dkt. No. 15-1 at 17)

The ALJ gave these opinions "very significant weight" due to the physicians' expertise, and the consistency of their opinions with each other and the overall medical evidence, including plaintiff's good response to ongoing medical treatment, as reflected in her reported activities of daily living and work activity after the alleged onset date. (Tr. 26)  Those opinions pre-dated plaintiff's right knee surgery that occurred on April 28, 2017. (Tr. 1486)

Generally, "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history." *Robinson v. Berryhill*, No.17-CV-0362, 2018 WL 4442267, *4 (W.D.N.Y. 2018). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) (quotation omitted); *accord Davis v. Berryhill*, No. 16-CV-6815, 2018 WL 1250019, *3 (W.D.N.Y. 2018). "The mere passage of time does not render an opinion stale.  Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, No. 16-CV-1005, 2018 WL 3868721, *4 (W.D.N.Y. 2018); *see also Best v. Berryhill*, No. 17-CV-0795, 2019 WL 1146341, *3 (W.D.N.Y. 2019) (in determining whether opinion evidence is stale, the "relevant issue is whether [claimant's] condition *deteriorated* during [the relevant] period.") (emphasis in original).

The record evidence shows that plaintiff's knee replacement was successful and reduced her pain and symptoms.  For example, while plaintiff used a walker for ambulation post-surgery, she ambulated without any assistive device by July 2017.  (Tr. 1555, 3351)  After developing scar tissue in the knee, she underwent  manipulation

surgery in August 2017.  Ten days later, plaintiff reported feeling better with much less pain and only some stiffness.  She walked with a normal gait and needed no assistive device.  (Tr. 2193, 3353, 3359-60)

Plaintiff saw orthopedist Dr. Landfried for a follow-up on her right knee in September 2017.  (Tr. 3367)  Dr. Landfried noted that "she is very happy with her results and is doing much better."  (Tr. 3367)  Her range of motion had improved and she was ambulating without any assistive devices.  (Tr. 3367)  Plaintiff's pain was controlled with pain medication and she reported no other complaints.  (Tr. 3367)  On examination, plaintiff's right knee was minimally tender on palpitation with full flexion and lacking only a few degrees of extension.  (Tr. 3368)  She walked with a normal gait and had full motor strength in her extremities.  (Tr. 3368)

At a visit to the emergency room for a sore throat in December 2017, plaintiff denied any joint pain.  (Tr. 3378)  On examination, she had normal lower extremities.  (Tr. 3379)

Plaintiff saw Dr. Stahl again in January 2018, who noted that plaintiff had normal motor strength in all four extremities and ambulated without assistance.  (Tr. 3394)  Dr. Stahl  recommended 150 minutes of moderate aerobic activity, or 75 minutes of vigorous aerobic activity, per week for weight loss.  (Tr. 3396)

Here, the ALJ explicitly discussed the medical evidence post-dating plaintiff's April 2017 knee replacement.  (Tr. 25 [noting good response to medication management and doing well after right knee replacement]).  The record does not reveal any significant deterioration of plaintiff's knee condition, and plaintiff does not cite to any evidence in support thereof.  Plaintiff's staleness argument is therefore without merit.  *See Szefler v.*

*Comm'r of Soc. Sec.*, No. 18-CV-668, 2019 WL 4168538, at *8 (W.D.N.Y. Sept. 3, 2019) ("The ALJ appropriately evaluated the medical opinions through the lens of the evidence available to the examiners at the time, as well as in the context of the evidence offered since the opinions were authored, and formulated the RFC based on his consideration of the record as a whole.").

For the reasons stated above, the Court finds that the ALJ's decision was free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 20, 2020
            Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge